TEITELBAUM & BASKIN, LLC
1 Barker Avenue, 3rd Floor
White Plains, New York 10601
Tel: (914) 437-7670
Fax: (914) 437-7672
Email: jteitelbaum@tblawllp.com
Attorneys for Defendants NCP Direct
Sourcing, Inc. and Thomas Paglia

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X
                                                          :

HANGZHOU KAILAI NECKWEAR          :  Case No. 15-CV-1441 (AN)
APPAREL CO. LTD.,                       :
                                                            :

                   Plaintiff,           :
                                                            :

-against-                                          :
                                                            :

NCP DIRECT SOURCING, INC., NCP DIRECT   :
SOURCING, INC., THOMAS PAGLIA, AND     :
JOHN DOE 1-10, AND XYZ COMPANY 1-10,   :
                                                            :

                   Defendants          :
————————————————————————X

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS NCP DIRECT SOURCING, INC. AND THOMAS PAGLIA

        Defendants NCP Direct Sourcing, Inc. ("**NCP**") and Thomas Paglia ("**Paglia**," and together with NCP, the "**Defendants**"), by and through their counsel, Teitelbaum & Baskin, LLC, by way of their Answer, Affirmative Defenses and Counterclaims to the Complaint filed by Plaintiff ("**Plaintiff**" or "**Hangzhou**") dated February 26, 2015 (the "**Complaint**"), hereby allege as follows:

## NATURE OF THIS ACTION

1.          Deny the allegations contained in Paragraph 1 of the Complaint.

## JURISDICTION AND VENUE

2.          Admit the allegations contained in paragraph 2 of the Complaint.

3.          Admit the allegations contained in paragraph 3 of the Complaint, but deny that NCP is currently domiciled in the State of New York.

4.          Deny the allegations contained in the first sentence of paragraph 4 of the Complaint, but admit the allegations in the second sentence of paragraph 4 of the Complaint and admit that venue is proper in the United States District Court for the Southern District of New York.

## PARTIES

5.          Deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6.          Admit the allegations contained in paragraph 6 of the Complaint, but deny that there are two NCP entities; NCP is a registered corporation in the States of New York and New Jersey with its principal place of business in the State of New Jersey.

7.          Deny the allegations contained in paragraph 7 of the Complaint, but admit that NCP is a corporation organized and existing under the laws of the State of New York and New Jersey.

8.          Deny the allegations contained in paragraph 8 of the Complaint.

9.          Admit the allegations in the first sentence of paragraph 9 of the Complaint.  Deny the allegations contained in the second sentence of paragraph 10 of the Complaint, and aver that Mr. Paglia is the secretary of NCP Direct Sourcing, Inc.

10.           Deny the allegations contained in paragraph 10 of the Complaint.

11.           Deny the allegations contained in paragraph 11 of the Complaint.

## RESPONSE TO STATEMENT OF FACTS

12.           Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint, but admit the allegations contained in paragraph 12 that Defendant NCP was conducting business with Plaintiff for the time period alleged.

13.           Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint, but admit the allegations contained in paragraph 13 that Defendant NCP was conducting business with Mr. Ai Wu "Sherman" Wang as principal of Plaintiff for the time period alleged.

14.           Deny the allegations contained in paragraph 14 of the Complaint.

15.           Admit the allegations contained in paragraph 15 of the Complaint, but aver that NCP or its predecessor Tojon Fabrics and Plaintiff first began doing business together in 1991 or 1992 in connection with the import to the United States of certain goods from China.

16.           Admit the allegations contained in paragraph 16 of the Complaint.

17.           Deny the allegations contained in paragraph 17 of the Complaint, but aver that in or around 2002, NCP was doing business with Plaintiff.

18.           Deny the allegations contained in paragraph 18 of the Complaint, but admit that Plaintiff and NCP continued to conduct business.

19.           Deny the allegations contained in paragraph 19 of the Complaint, but admit that in 2013, NCP was incorporated in New Jersey and located its principal place of business at 333 Meadowland Parkway, Secaucus, New Jersey  07094.

20.          Deny the allegations contained in paragraph 20 of the Complaint, but admit that NCP through its employees regularly placed orders with PlaintiffPlaintiff by facsimile, telephone and email.

21.          Deny the allegations contained in paragraph 21 of the Complaint, but admit that NCP place orders with Plaintiff for "Goods."

22.          Admit the allegations contained in paragraph 22 of the Complaint.

23.          Deny the allegations contained in paragraph 23 of the Complaint.

24.          Deny knowledge or information sufficient to form a belief as to the truth of  the allegations contained in paragraph 24 of the Complaint.

25.          The allegations contained in paragraph 25 of the Complaint are too vague to admit or deny and are therefore denied.

26.          The allegations contained in paragraph 26 of the Complaint are too vague to admit or deny and are therefore denied.

27.          Deny the allegations contained in paragraph 27 of the Complaint.

28.          Deny the allegations contained in paragraph 28 of the Complaint.

29.          The allegations contained in paragraph 29 of the Complaint are too vague to admit or deny and are therefore denied.

30.          Deny the allegations contained in paragraph 30 of the Complaint.

31.          Deny the allegations contained in paragraph 31 of the Complaint.

32.          Admit the allegations contained in paragraph 32 of the Complaint, but deny that such demands were proper and aver that such demands were rejected by Defendants.

33.          Deny the allegations contained in paragraph 33 of the Complaint.

34.          Deny the allegations contained in paragraph 34 of the Complaint.

35.         Deny the allegations contained in paragraph 35 of the Complaint.

36.         Deny the allegations contained in paragraph 36 of the Complaint, but admit that NCP made a payment to Kailai in the amount of $174,299.08 in May 2012.

37.         Deny the allegations contained in paragraph 37 of the Complaint.

38.         Deny the allegations contained in paragraph 38 of the Complaint.

39.         Deny the allegations contained in paragraph 39 of the Complaint.

40.         Deny the allegations contained in paragraph 40 of the Complaint.

41.         Deny the allegations contained in paragraph 41 of the Complaint.

42.         Deny the allegations contained in paragraph 42 of the Complaint.

43.         Deny the allegations contained in paragraph 43 of the Complaint, but admit that NCP has been unable to sell all or substantially all of the Goods provided by Plaintiff because the Goods did not conform to the specifications and samples agreed upon by the parties; and that the Good were defective and were not delivered in a timely manner for specified selling seasons.

44.         Deny the allegations contained in paragraph 44 of the Complaint.

45.         Deny the allegations contained in paragraph 45 of the Complaint.

46.         Deny the allegations contained in paragraph 46 of the Complaint. Defendants were never provided with notice of any changes and therefore were never given the opportunity to cancel or change any orders.

47.          Deny the allegations contained in paragraph 47 of the Complaint.

48.         Deny the allegations contained in paragraph 48 of the Complaint.

49.        Deny the allegations contained in paragraph 49 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

50.        Deny the allegations contained in paragraph 50 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

51.        Deny the allegations contained in paragraph 51 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

52.        Deny the allegations contained in paragraph 52 of the Complaint, but admit that on or about March 27, 2013, Mr. Paglia sent an email to Mr. Wang and aver that on April 9, 2013, NCP sent a payment to Plaintiff in the amount of $50,000.00.

53.        Deny the allegations contained in paragraph 53 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

54.        Deny the allegations contained in paragraph 54 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

55.        Deny the allegations contained in paragraph 55 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

56.         Deny the allegations contained in paragraph 56 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

57.         Deny the allegations contained in paragraph 57 of the Complaint.

58.         Deny the allegations contained in paragraph 58 of the Complaint, but admit that NCP made payments to Plaintiff in 2012 and 2013.

59.         Defendants cannot locate any such email at this time and therefore deny the allegations contained in paragraph 59 of the Complaint.

60.         Defendants cannot locate any such email at this time and therefore deny the allegations contained in paragraph 60 of the Complaint.

61.         Deny the allegations contained in paragraph 61 of the Complaint. Defendants aver that Plaintiff has intentionally omitted reference to the entirety of such email and email chain to misrepresent the content thereof.

62.         Deny the allegations contained in paragraph 62 of the Complaint.

63.         Deny the allegations contained in paragraph 63 of the Complaint.

64.         Deny the allegations contained in paragraph 64 of the Complaint.

65.         Deny the allegations contained in paragraph 65 of the Complaint.

66.         Deny the allegations contained in paragraph 66 of the Complaint.

67.         Deny the allegations contained in paragraph 67 of the Complaint.

68.         Defendants cannot locate any such email at this time and therefore deny the allegations contained in paragraph 68 of the Complaint.

69.         Defendants cannot locate any such email at this time and therefore deny the allegations contained in paragraph 69 of the Complaint.

70.     Defendants cannot locate any such email at the time and therefore deny the allegations contained in paragraph 70 of the Complaint.

71.     Deny the allegations contained in paragraph 71 of the Complaint.

72.     Deny the allegations contained in paragraph 72 of the Complaint.

73.     Deny the allegations contained in paragraph 73 of the Complaint.

74.     Admit the allegations contained in paragraph 74 of the Complaint.

75.     Deny the allegations contained in paragraph 75 of the Complaint.

76.     Deny the allegations contained in paragraph 76 of the Complaint.

77.     Deny the allegations contained in paragraph 77 of the Complaint.

78.     Deny the allegations contained in paragraph 78 of the Complaint.

79.     Deny the allegations contained in paragraph 79 of the Complaint, but admit that a payment in the amount $10,000 was made by NCP to Plaintiff in April 2014.

80.     Deny the allegations contained in paragraph 80 of the Complaint.

81.     Deny the allegations contained in paragraph 81 of the Complaint.

82.     Deny the allegations contained in paragraph 82 of the Complaint.

83.     Deny the allegations contained in paragraph 83 of the Complaint.

84.     Deny the allegations contained in paragraph 84 of the Complaint.

85.     Deny the allegations contained in paragraph 85 of the Complaint.

86.     Deny the allegations contained in paragraph 86 of the Complaint.

87.     Deny the allegations contained in paragraph 87 of the Complaint.

88.     Deny the allegations contained in paragraph 88 of the Complaint.

89.     Deny the allegations contained in paragraph 89 of the Complaint.

## First Count – Breach of Contract
## (CISG Articles 53, 61)

90.　　　　Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

91.　　　　Deny the allegations contained in paragraph 91 of the Complaint, and refer the Court to the terms of the Contracts.

92.　　　　Deny the allegations contained in paragraph 92 of the Complaint.

93.　　　　Deny the allegations contained in paragraph 93 of the Complaint.

94.　　　　Deny the allegations contained in paragraph 94 of the Complaint.

## Second Count – Account Stated

95.　　　　Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

96.　　　　Deny the allegations contained in paragraph 96 of the Complaint.

97.　　　　Deny the allegations contained in paragraph 97 of the Complaint.

98.　　　　Deny the allegations contained in paragraph 98 of the Complaint.

99.　　　　Deny the allegations contained in paragraph 99 of the Complaint.

100.　　　　Deny the allegations contained in paragraph 100 of the Complaint.

101.　　　　Deny the allegations contained in paragraph 101 of the Complaint.

102.　　　　Deny the allegations contained in paragraph 102 of the Complaint.

## Third Count - Fraud

103.　　　　Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

104.　　　　Deny the allegations contained in paragraph 104 of the Complaint. Defendants aver that payment was not contingent on Defendants' ability to sell the goods but

was contingent on Plaintiff's performance pursuant to the agreement of the parties, which Plaintiff failed to do.

105.     Deny the allegations contained in paragraph 105 of the Complaint.

106.     Deny the allegations contained in paragraph 106 of the Complaint.

107.     Deny the allegations contained in paragraph 107 of the Complaint.

108.     Deny the allegations contained in paragraph 108 of the Complaint.

109.     Deny the allegations contained in paragraph 109 of the Complaint.

110.     Deny the allegations contained in paragraph 110 of the Complaint.

111.     Deny the allegations contained in paragraph 111 of the Complaint.

112.     Deny the allegations contained in paragraph 112 of the Complaint.

113.     Deny the allegations contained in paragraph 113 of the Complaint.

114.     Deny the allegations contained in paragraph 114 of the Complaint.

### Fourth Count – Unjust Enrichment

115.     Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

116.     Deny the allegations contained in paragraph 116 of the Complaint.

117.     Deny the allegations contained in paragraph 117 of the Complaint.

118.     Deny the allegations contained in paragraph 118 of the Complaint.

119.     Deny the allegations contained in paragraph 119 of the Complaint.

120.     Deny the allegations contained in paragraph 120 of the Complaint.

### Fifth Count – Declaratory Judgment

121.     Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

122.     Deny the allegations contained in paragraph 122 of the Complaint.

123.     Deny the allegations contained in paragraph 123 of the Complaint.

## Sixth Count – Piercing the Corporate Veil

124.     Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

125.     Deny the allegations contained in paragraph 125 of the Complaint and aver that Mr. Paglia is secretary of NCP.

126.     Deny the allegations contained in paragraph 126 of the Complaint.

127.     Deny the allegations contained in paragraph 127 of the Complaint.

128.     Deny the allegations contained in paragraph 128 of the Complaint.

129.     Deny the allegations contained in paragraph 129 of the Complaint.

130.     Deny the allegations contained in paragraph 130 of the Complaint.

131.     Deny the allegations contained in paragraph 131 of the Complaint.

132.     Deny the allegations contained in paragraph 132 of the Complaint.

133.     Deny the allegations contained in paragraph 133 of the Complaint.

134.     Deny the allegations contained in paragraph 134 of the Complaint.

135.     Deny the allegations contained in paragraph 135 of the Complaint.

136.     Deny the allegations contained in paragraph 136 of the Complaint.

137.     Deny the allegations contained in paragraph 137 of the Complaint.

138.     Deny the allegations contained in paragraph 138 of the Complaint.

139.     Deny the allegations contained in paragraph 139 of the Complaint.

140.     Deny the allegations contained in paragraph 140 of the Complaint.

141.     Deny the allegations contained in paragraph 141 of the Complaint.

142.     Deny the allegations contained in all Wherefore clauses including subparts (a) through (h).


### STATEMENT OF FACTS RELATED TO AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

143.     NCP is in the business of importing and selling men's garments and accessories for wholesale in the United States.

144.     NCP is a New Jersey corporation, with a business address of 333 Meadowland Parkway, Secaucus, New Jersey.

145.     NCP contracts with manufacturers, typically in the country of China, to manufacture licensed and other products for import to the United States.

146.     Upon information and belief, Plaintiff/Counterclaim Defendant Kailai is in the business of manufacturing and exporting garments and fashion accessories from China.

**Prior Dealings Between the Parties**

147.     In or around 1991 or 1992, NCP, doing business at the time as Tojon Fabrics, Inc., began doing business with Plaintiff/Counterclaim Defendant in connection with the import of specified men's clothing and accessories.

148.     In or around 2000, NCP, as Tojon, entered into a licensing agreement for the license of the Adolfo brand of men's shirts.   NCP, as Tojon, contracted with Plaintiff/Counterclaim Defendant for Plaintiff/Counterclaim Defendant to manufacture the Adolfo brand shirts for NCP.

149.     The Adolfo shirts that Plaintiff/Counterclaim Defendant contracted to manufacture were standard shirts with (i) in one standard fit ("American cut"); (ii) in seven or

eight colors with collars, cuffs and body being the same fabric and color; (iii) one type of button; (iv) standard seventeen sizes; and (v) one type of pointed collar.

150.         The Adolfo shirts were packaged as folded in a polyethalene bag with cardboard collars and pins.

151.         The Adolfo shirts were shipped in bulk in a container on a ship from China to the United States.

152.         From 2000 to 2012, NCP (first as Tojon and then NCP) and Plaintiff/Counterclaim Defendant developed a regular course of dealing in which NCP placed orders with Kailai by email, telephone or facsimile for the manufacture of the Adolfo shirts and by sending written purchase orders to confirm the details of the orders.  Plaintiff/Counterclaim Defendant would then send invoices to NCP for the orders, which NCP would pay by wire transfer.

153.         Plaintiff/Counterclaim Defendant manufactured and delivered the Adolfo shirts pursuant to the agreement of the parties and NCP timely paid for such shirts.

**Stacy Adams**

154.         In 2012, NCP became the exclusive United States licensee for the Stacy Adams brand of men's shirts.  The Stacy Adams brand of shirts was sold to numerous retailers in the United States including independent retailers, as well as JC Penney, Amazon, and K&G stores.

155.         NCP invested a great deal of its resources, time and effort in obtaining the Stacy Adams license.  Pursuant to the Stacy Adams shirts license, NCP paid a licensing fee and was obligated to pay and did pay a "Guaranteed Minimum Royalty" each year.

156.        NCP retained sales representatives to sell the Stacy Adams shirts and paid the sales representatives a commission on those shirts that were sold to and paid for by the retailers.

157.        NCP projected to sell hundreds of thousands of Stacy Adams shirts in 2013 with increased sales projected for the license.  For 2013, such sales were projected to generate revenue exceeding $3 million.

158.        The fabrication of the Stacy Adams shirts was more complicated than the Adolfo shirts, for example, the Stacy Adams shirts specified: (i) 32 sizes; (ii) multiple fits, including regular fit and slim fit; (iii) more colors and color combinations for collars, cuffs and body; (iv) multiple types of collars; and (v) multiple types of cuffs, including French cuffs; and (vi) multiple button options.

159.        Plaintiff/Counterclaim Defendant represented to NCP that it had the capability to properly manufacture the Stacy Adams shirts and that it could do so in a timely manner.   Based on those representations, NCP continued to transact business with Plaintiff/Counterclaim Defendant and contracted to have Plaintiff/Counterclaim Defendant manufacture the Stacy Adams shirts.

160.        NCP ordered the Stacy Adams shirts by email, facsimile or telephone by certain purchase orders specifying all details of the order including the timing for delivery, which were accepted by Plaintiff/Counterclaim Defendant (the "**Contracts**").

161.        Given the seasonality of the garment industry, timing of delivery was critical.

162.        Given the competitive business of men's clothing, quality of manufacture and compliance with specifications and samples was critical.

14

163.        NCP retained a technician to prepare the specifications for the Stacy Adams Goods and provided the specifications to Plaintiff/Counterclaim Defendant.

164.        Plaintiff/Counterclaim Defendant failed to deliver Stacy Adams shirts which conformed to the specifications, samples and delivery deadlines agreed upon by the parties.  Among other things, the Stacy Adams Goods did not conform to (i) specifications for, among other things, quality, size, color, design, material, labeling and packaging; (ii) were delivered damaged as a result of faulty and defective manufacture, packaging, and shipping; and (iii specified delivery dates.

165.        As a result of Plaintiff/Counterclaim Defendant's misrepresentations and manufacture of the defective and non-conforming Stacy Adams shirts: (i) NCP's customers rejected the Stacy Adams shirts; (ii) NCP's sales representatives refused to sell the Stacy Adams shirts and other products provided by NCP; (iii) NCP is storing hundreds of thousands of Stacy Adams shirts in a warehouse; and (iv) NCP's reputation has been irreparably damaged.

166.        As a result, NCP has sustained significant economic damages.

**Goods Damaged Because Not Packaged Correctly**

167.        Plaintiff/Counterclaim Defendant failed to package and ship the Stacy Adams shirts in a manner which protected the Stacy Adams Goods from damage.

168.        NCP advised Mr. Wang that the Stacy Adams shirts were packaged improperly and were arriving damaged and Mr. Wang acknowledged on numerous occasions that Plaintiff/Counterclaim Defendant was at fault and responsible for the damaged shirts.

169.        As an example, by email dated November 28, 2012, Mr. Paglia  advised Mr. Wang that the samples were packaged incorrectly and the Goods were arriving crushed:

*Sherman   Please – Be sure proper size bags are used for king solids – do not use small bag and have packed too tight.   Spring sample are curling up at edges – important Thanks  - Please confirm  B. Rgrds, Tom.*

170.        In response to an email from Mr. Wang requesting whether the Spring samples were acceptable, on November 28, 2012, Mr. Paglia sent Mr. Wang the following email:

*Hi, Italo is reviewing now – to me they look very nice.  Problem you must talk with plant is that they should not put 3 shirts in an inner carton – they get crushed. They should not use old mildew cartons for new shirts.  It hurts the beauty of the shits when they arrive in bad packing.  Shirts again are packed too tight - need wider bags so there is no curling on shoulder edges.  Important.  Thanks B. Rgrds. Tom.*

171.        Again, on December 19, 2012, Mr. Paglia by email advised Mr. Wang that,

*Sherman  Fold is Wrong!!  Cannot ship folded like this.  Please why is this happening?  Shirts are to be folded 9" inches across and 13.5 length measured on back from collar to end.  Samples you sent are 8.5 across and 14.5 length measured on back from collar to end.  All kng shirts are folded same way – we cannot ship with different fold. They did not follow sample.  They did Adolfo fold.   Please send corrected samples immediately.  Urgent  Thanks, B. Rgrds, Tom*

172.        By February 2013, NCP became aware that Plaintiff/Counterclaim Defendant was packaging 36 to 48 shirts in a carton meant for 24 shirts.  As a result, shirts were arriving crushed and damaged.

173.        Retailers refused to accept crushed and improperly packaged shirts. Retialers cancelled orders and returned the defective Stacy Adams Goods to NCP.

174.        NCP lost sales in the amount of at least $3 million and has sustained

substantial damages to its reputation in an amount to be determined at trial.

**Goods Did Not Perform to Specifications**

175.        Plaintiff/Counterclaim   Defendant   failed   to   follow   manufacturing

specifications and samples for sizing, including incorrect sleeve lengths and body fity, collar

size, color and material.

176.        By email dated February 15, 2013, Mr. Wang advised Mr. Paglia: "*Cape*

*Town [style shirt] – collar size is wrong, they used standard collar.  But collar quality is sateen*

*and collar color is white, we don't have other fabric.  Is white color wrong?  Please let me know*

*know.  Too much trouble for this line.  Thanks, Sherman.*"

177.        By email dated June 17, 2013, Mr. Wang stated to Mr. Paglia:

*Tom, Sleeve length – as I said in office, Mr. Guo made this mistake.  He thought 34" for 34/35 is*

*acceptable.  Correcting all this from shirt orders 4/13 and all new shipments. You can check*

*recent shipments.  4/13, 12/13, 15/13, etc.  For previous shipments, we can do nothing now.  As I*

*said before, pls get all returned shirts in warehouse, I will ask Mr. Cui to come and see by*

*himself and they need to be responsible for this.  Sorry for trouble.  Sherman*

178.        On June 18, 2013, Mr. Paglia sent an email to Mr. Wang stating:

"*Sherman, We are receiving more complaints about sleeve lengths – why?*"   Mr. Wang replied,

"*Tom, Sleeve Length – previous orders are all the same sleeve.  5/13, 12/13, 15/13 ,14/13 and all*

*new orders will have longer sleeve.  We can nothing on previous shipments.  Sorry.*"

179.        As a result, NCP's customers rejected and returned Stacy Adams shirts

and cancelled orders.

180.	As a consequence, NCP has suffered substantial losses of sales revenue in the amount of at least $3 million and damages to its reputation in an amount to be determined at trial.

**Goods Were Delivered Late**

181.	In order to address the seasonality of the sales of the Stacy Adams Goods, all orders specified a delivery date for arrival in the United States.

182.	Plaintiff/Counterclaim Defendant represented that all deliveries would be made on time.

183.	Plaintiff/Counterclaim Defendant failed to deliver Stacy Adams shirts on time as required.  For example, Stacy Adams shirts to be delivered on January 25, 2013 for the Stacy Adams Spring line (to be sold immediately after receipt, with the strongest months from February to April 2013) were received between April 10, 2013 and November 29, 2013.

184.	In addition to lost sales due to shirts not be available for the selling season, NCP incurred substantial expense to ship the shirts by Federal Express Air, rather than container ship in order to have shirts to sell and salvage customer relationships.

185.	The following shows a sampling of  the dates that the shirts were agreed to be delivered and the dates they were actually delivered:

| Order Number | Number of Shirts | Date Agreed to Be Delivered | Actual Date Received |
| --- | --- | --- | --- |
| SHI 56/12 | 13,379 | January 25, 2013 | April 20, 2013 |
| SHI 12/13 | 3,760 | January 25, 2013 | June 13, 2013 |
| SHI 5/13 | 512 | January 25, 2013 | June 14, 2013 |
| SHI 15/13 | 999 | January 25, 2013 | June 18, 2013 |

| | | | |
|---|---|---|---|
| SHI  6/13 | 3,984 | May 25, 2013 | September 8, 2013 |
| SHI  12/13 | 454 | May 20, 2013 | July 23, 2013 |
| SHI 29/13 | 6,723 | January 25, 2013 | September 13, 2013 |
| SHI 31/13 | 1,846 | January 25, 2013 | November 29, 2013 |
| SHI 33/13 | 2,275 | January 25, 2013 | November 29, 2013 |
| SHI 29/13 | 2,375 | January 25, 2013 | September 13, 2013 |
| SHI 32/13 | 7,402 | January 25, 2013 | November 29, 2013 |
| SHI 13/13 | 1,585 | January 25, 2013 | September 27, 2013 |
| SHI 16/13 | 4,603 | January 25, 2013 | September 27, 2013 |
| SHI 21/13 | 14,101 | January 25, 2013 | October 7, 2013 |
| SHI 30/13 | 11,069 | January 25, 2013 | October 9, 2013 |
| SHI 28/13 | 13,137 | January 25, 2013 | October 11, 2013 |
| SHI 45/13 | 1,029 | August 25, 2013 | January 3, 2013 |
| SHI 46/13 | 200 | August 25, 2013 | January 3, 2014 |
| SHI 45/13 | 3,783 | August 25, 2013 | January 23, 2014 |
| SHI 45/13 | 661 | August 25, 2013 | November 29, 2013 |
| SHI 46/13 | 670 | August 25, 2013 | November 28, 2013 |
| SHI 46/13 | 1,347 | August 25, 2013 | November 28, 2013 |
| SHI 46/13, 47/13 | 2,676 | August 25, 2013 | March 1, 2014 |
| SHI 47/13 | 1,166 | August 25, 2013 | January 29, 2014 |
| SHI 35/13 | 3,708 | August 25, 2013 | November 13, 2013 |
| SHI 36/13 | 3,621 | August 25, 2013 | November 12, 2013 |
| SHI 45/13 | 2,139 | August 25, 2013 | January 3, 2014 |

| SHI 46/13 | 25,179 | August 25, 2013 | January 3, 2014 |
| Shi 46/47 | 2, 488 | August 25, 2103 | February 5, 2014 |

186.     The total amount of the shirts that were delivered late as reflected in the chart above is at least $1,046,761.92.

187.     Mr. Wang consistently acknowledged that the late shipments were the fault of Plaintiff/Counterclaim Defendant and the plant.  As an example of numerous emails, by email dated April 23, 2013, Mr. Wang stated the following:

*Tom, Fancies – we here all know it is urgent.  Plant has been working on 112 cartons of Rome, Phuket, Melbourne, LeMans will be finished this weekend and will be shipped by air.  Capte Twon and Montreal will follow.  After this, all shirts which need air shipment are finished, we will ship balance by sea.  I understand it is taking more time than expected, we never expected, we never expected this kind of shirts are taking so much time. For each style, 1000 pieces, we have 32 sizes, cutting take much much more time, sewing and everything else are taking much much more time.  Many styles need trimming which take more time, embroidery like Rome take much more time, the embroidery is done by other plant, some embroidery are bad and need to be done again, this is the situation here.  We have been making shirts for last 12 years, you know better than them this plant is good.  In fact, only a few good plants can do this kind of shirts.  I understand they just wnt perfect shirts in time, but they don't know what is happening here.  After Chinese New Year, workers don't do night work.  Going forward, pls tell sales people and Stacy Adams, we need at least 3 months to finish this kind of shirts after all is confirmed. Sorry for trouble. Sherman*

188.        Because of the late deliveries, customers refused to accept deliveries and NCP has suffered lost sales in excess of $3 million and damage to its reputation in an amount ot be determined at trial.

**Damages to NCP**

189.        As a result of Plaintiff/Counterclaim Defendant's failure to deliver Stacy Adams shirts, which conformed to the specifications and samples agreed upon by the parties as required by the Contracts and agreements with NCP, NCP has suffered substantial economic damages including:

(i)     Lost sales in the amount of at least $3 million;

(ii)    Warehousing costs in the amount of at least $75,000.00 (which continue to accrue);

(iii)   Expense for expedited shipping of at least $600,000;

(iv)    Payment of royalty and licensing fees in the amount of at least $280,000.00;

(v)     Payment of commissions and other salaries of at least $50,000.00.

190.        In addition, as a result of Plaintiff/Counterclaim Defendant's failure to deliver Stacy Adams shirts which conformed to specifications and samples agreed upon by the parties, NCP has suffered damage to its reputation in an amount to be determined at trial.

**Hangzhou Lufu Neckwear & Apparel Co. Joint Venture with Plaintiff/Counterclaim Defendant**

191.        On or around August 28, 2000 Plaintiff and Defendant Paglia entered into a Contract (the "**Joint Venture Contract**") for the establishment of the joint venture Hangzhou Lufu Neckwear & Apparel Co., Ltd. (the "**Joint Venture Company**") to develop manufacture

and manage forms of dress, apparel and neckties and to purchase buildings in China to produce such goods.

192.        Pursuant to Article 10 of the Articles of Association of the Joint Venture Company and Article 10 of the Joint Venture Contract, the total investment sum of the Joint Venture Company at the time of formation of the Joint Venture Company in October 2000 was one-hundred and fifty-thousand dollars ($150,000.00).

193.        Pursuant to Article 11 of the Articles of Association of the Joint Venture Company and Article 10 of the Joint Venture Contract, of the $150,000 initial investment, Plaintiff invested thirty-thousand dollars ($30,000.00) and Mr. Paglia initially invested seventy-five thousand dollars ($75,000.00) in the Joint Venture Company.

194.        The Articles of Association of the Joint Venture Company expressly state that that Plaintiff's' capital contribution was at that time 28.6% of registered capital and that Mr. Paglia's capital contribution was at that time 71.45% of registered capital.

195.        In or around 2002, according to a document entitled, "Certificate of Approval," the Joint Venture Company passed a resolution by the board of directors to increase the total investment and registered capital of the company from $150,000.00 to $500,000.00. Plaintiff increased its contribution to the Joint Venture Company from $30,000.00 to $85,000.00, which accounted for 24.3% of registered capital and Mr. Paglia's contribution increased from $75,000.00 to $265,000.00, which accounted for 75.7% of registered capital.

196.        In or around 2004, Mr. Paglia lent the Joint Venture Company the amount of one-hundred and fifty thousand dollars ($150,000.00) for the construction of factory buildings in China.  The loan was to be repaid to Mr. Paglia in full by the Joint Venture Company by December 21, 2007 (the "**Joint Venture Loan**").

22

197.        The Joint Venture Company constructed certain buildings in China in order to manufacture the apparel and neckties.

198.        As part of the Joint Venture, Mr. Paglia was to receive net rental income from buildings.

199.        Mr. Paglia's total contribution to the Joint Venture Company to date totals the amount of five hundred and sixty-five ($565,000.00).

200.        Plaintiff has never paid Mr. Paglia any net rental income from the building or provided an accounting of such income.

201.        Upon information and belief, Plaintiff sold some or all of the buildings, but has failed and refused to account for a turnover of any sale proceeds.

202.        Mr. Paglia and the Joint Venture Company entered into a Repayment Extension Agreement of the Joint Venture Loan, where the Joint Venture Company requested an extension to repay the $150,000.00 loan amount to December 21, 2015, with payments due as follows:  (1) $50,000.00 by end of October 2015; (2) $50,000.00 by end of November 2015; and (3) $50,000.00 by December 21, 2015.

## AFFIRMATIVE DEFENSES

203.        Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

## FIRST AFFIRMATIVE DEFENSE

### Failure to State A Claim

204.        The Complaint and each and every count therein fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### Breach of Contract

205.         Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

206.         Plaintiff's claims are barred in whole or in part by Plaintiff's  failure to deliver Stacy Adams shirts which conformed to the specifications, including timing of delivery, and samples agreed upon by the parties.

207.         Plaintiff failed to provide goods which conformed to the terms and specifications agreed upon by the parties.

208.         Accordingly, Plaintiff has breached its agreements with NCP and cannot maintain this action.

## THIRD AFFIRMATIVE DEFENSE

### Breach of United States Convention on Contracts for the International Sale of Goods ("CISG")

209.         Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

210.         Plaintiff's claims are barred in whole or in part by Plaintiff's failure to perform the terms of the agreements for the delivery of the Goods in violation of Articles 25, 33, 35, 36 (a) through (d), 74 and 78 of the CISG.

211.         Plaintiff failed to provide goods which conformed to the terms and specifications, including timing of delivery, and samples agreed upon by the parties.

212.         Plaintiff is in breach of Article 35 of the CISG, which provides:

(1) The seller must deliver goods which are of the quantity, quality and description required by the contract and which are contained or packaged in the manner required by the contract.

(2) Except where the parties have agreed otherwise, the goods do not conform with the contract unless they: (a) are fit for the purposes for which goods of the same description would ordinarily be used; (b) are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract, except where the circumstances show that the buyer did not rely, or that it was unreasonable for him to rely, on the seller's skill and Judgment; (c) possess the qualities of goods which the seller has held out to the buyer as a sample or model; (d) are contained or packaged in the manner usual for such goods or, where there is not such manner, in a manner adequate to preserve and protect the goods.

213.        The Stacy Adams shirts manufactured and delivered by Plaintiff did not conform to the specifications, including timing of delivery and samples agreed upon by the parties.

214.        Accordingly, under Article 36 of the CISG, the seller is liable for any lack of conformity and Plaintiff's claims are barred by such breach.

## FOURTH AFFIRMATIVE DEFENSE

### Fraud In the Inducement

215.        Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

216.	Plaintiff fraudulently induced NCP to order goods from Plaintiff by materially misrepresenting to Defendants that (i) Plaintiff was capable of manufacturing the Goods as specified in a timely manner.

217.	Plaintiff knew or should have known that the Stacy Adams Goods were too complex for Plaintiff to manufacture.

218.	Defendants had no information or basis to know that Plaintiff had made such material misrepresentations.

219.	Defendants reasonably relied to the their detriment upon such fraudulent misrepresentations.

### FIFTH AFFIRMATIVE DEFENSE

### Failure to Mitigate Damages

220.	Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

221.	Plaintiff's claims are barred to the extent that they failed to exercise reasonable care to mitigate the damages alleged.

### SIXTH AFFIRMATIVE DEFENSE

### Unclean Hands

222.	Defendants repeat and reallege each and every response contained above as if fully set forth herein.

223.	Plaintiff's claims are barred by their own unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

### Waiver and Estoppel

224.        Defendants repeat and reallege each and every response contained above as if fully set forth herein.

225.        Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

### Unjust Enrichment

226.        Defendants repeat and reallege each and every response contained above as if fully set forth herein.

227.        Plaintiff's claims are barred because Plaintiff would be unjustly enriched if it were to prevail.

## NINTH AFFIRMATIVE DEFENSE

### Offset

228.   Defendants repeat and reallege each and every response contained above as if fully set forth herein.

229.   Without conceding that any Defendants caused damage to Plaintiff in any respect, Defendants are entitled to an offset against any judgment that may be entered for the Plaintiff of all obligations of the Plaintiff due and owing to Defendants.

## TENTH AFFIRMATIVE DEFENSE

### Recoupment

230.        Defendants repeat and reallege each and every response contained above as if fully set forth herein

231.   Without conceding that any Defendants caused damage to Plaintiff in any respect, Defendants are entitled to recoup against any judgment that may be entered for the Plaintiff of all obligations of the Plaintiff in connection with the (i) Goods that were delivered as non-

conforming, defective and late; (ii) the Joint Venture; and (iii) the Repayment of the Joint Venture Loan.

## ELEVENTH AFFIRMATIVE DEFENSE

### Statute of Limitations

232.   Defendants repeat and reallege each and every response contained above as if fully set forth herein.

233.   Plaintiff's claims for breach of contract are barred by the statute of limitations.

## TWELFTH AFFIRMATIVE DEFENSE

### Payment Made By NCP

234.   Defendants repeat and reallege each and every response contained above as if fully set forth herein.

235.        Plaintiff has failed to account for payments received from NCP.

## THIRTEENTH AFFIRMATIVE DEFENSE

### Defenses Arising from the Counterclaims

236.   Defendants repeat and reallege each and every response contained above as if fully set forth herein.

237.   Defendants affirmatively raise and reserve all defenses arising out of or based upon the allegations of the Defendants set forth in the Counterclaims and the facts alleged in support below.

        **WHEREFORE**, Defendants respectfully request that the Court enter an order dismissing the Complaint with prejudice and awarding such other and further relief as the Court

deems just and proper, together with the costs, expenses and disbursements incurred by the Defendants in this action.

## COUNTERCLAIMS

The Defendants, by and through their undersigned counsel, as and for their Counterclaims against PlaintiffCounterclaim Defendant Hangzhou Kailai Neckwear Apparel Co., Ltd., allege as follows:

238.   Defendants repeat and reallege each and every of the forgoing paragraphs above as if fully set forth herein.

## JURISDICTION

239.   This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2) because Plaintiff/Counterclaim Defendant and Defendant/Counterclaim Plaintiffs are citizens of a State and citizens or subjects of a foreign state and the amount of controversy exceeds $75,000.00. This Court also has jurisdiction under 28 U.S.C. §1331.

240.   Venue is proper pursuant to 28 U.S.C. §1391(a)(2) because all or a substantial portion of the events that give rise to Defendants/Counterclaim Plaintiff's claims transpired in the State of New York, where NCP was doing business.

## THE PARTIES

241.   Defendant and Counterclaim Plaintiff NCP Direct Sourcing, Inc. ("**NCP**") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 333 Meadowland Parkway, Secaucus, New Jersey  07094.

242.   Defendant and Counterclaim Plaintiff Thomas Paglia is a resident of the State of New York and an officer of NCP.

243.   Upon information and belief, Plaintiff/Counterclaim Defendant Hangzhou Kailai Neckwear Apparel Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business located in the City of Hangzhou, Zhejiang Province China.

## FIRST COUNTERCLAIM

### (Breach of Contract)

244.   Defendants repeat and reallege each and every response contained above as if fully set forth herein.

245.   Plaintiff/Counterclaim Defendant repeatedly failed to deliver Stacy Adams shirts that met the specifications, including timing of delivery, and samples agreed upon by the parties.

246.   The non-conforming and/or defective goods were not fit for their intended purpose.

247.   As a direct and proximate result of Plaintiff/Counterclaim Defendant's breaches, NCP has incurred damages, including:

  (i)   Lost sales in the amount of at least $3 million;

  (ii)   Warehousing costs in the amount of at least $75,000.00 (which continue to accrue);

  (iii)   Expenses for expedited shipping of at least $600,000.00;

  (iv)   Payment of royalty and licensing in the amount of at least $280,000.00;

  (v)   Payment of commissions and other salaries of at least $50,000.00.

248.   In addition, as a result of Plaintiff/Counterclaim Defendant's action and conduct, NCP has suffered damage to its reputation in an amount to be determined at trial.

## SECOND COUNTERCLAIM

## Breach of United States Convention on Contracts for the International Sale of Goods ("CISG")

249.        Defendants reallege and reincorporate the allegations in the foregoing paragraphs as if fully set forth herein.

250.        Plaintiff/Counterclaim Defendant has breached the Contracts entered into with Defendants in violation of Articles 25, 33, 35, 36 (a) through (d), 74 and 78 of the CISG.

251.        Plaintiff/Counterclaim Defendant failed to deliver goods which conformed to the specifications, including timing of delivery, and samples agreed upon by the parties which were otherwise consistent with industry standards.

252.        Accordingly, Plaintiff/Counterclaim Defendant is in breach of Article 25 of the CISG, which provides:  "[a] breach of contract committed by one of the parties is fundamental if it results in a such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract, unless the party in breach did not foresee and a reasonable person of the saine kind in the same circumstances would not have foreseen such a result."

253.        Furthermore, Plaintiff/Counterclaim Defendant is in breach of Article 33 of the CISG, which provides:  "The seller must deliver the goods:  (a) if a date is fixed by or determinable from the contract, on that date; (b) if a period of time is fixed by or determinable from the contract, at any time within that period unless circumstances indicate that the buyer is to choose a date; or (c) in any other case, within a reasonable time after the conclusion of the contract."

254.        As set forth above, Plaintiff/Counterclaim Defendant failed to deliver the Stacy Adams shirts by the agreed upon delivery dates with NCP.

255.        Plaintiff/Counterclaim Defendant is in breach of Article 35 of the CISG, which provides:

> "1. The seller must deliver goods which are of the quantity, quality and description required by the contract and which are contained or packaged in the manner required by the contract.2. Except where the parties have agreed otherwise, the goods do not conform with the contract unless they: (a) are fit for the purposes for which goods of the same description would ordinarily be used; (b) are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract, except where the circumstances show that the buyer did not rely, or that it was unreasonable for him to rely, on the seller's skill and Judgment; (c) possess the qualities of goods which the seller has held out to the buyer as a sample or model; (d) are contained or packaged in the manner usual for such goods or, where there is not such manner, in a manner adequate to preserve and protect the goods."

256.        The non-conforming Stacy Adams shirts manufactured and delivered were not fit for the purposes for which the parties specified and intended.

257.        Accordingly, under Article 36 of the CISG, Plaintiff/Counterclaim Defendant is liable for any lack of conformity of the Stacy Adams Goods.

258.        As a direct and proximate result of Plaintiff/Counterclaim Defendant's breaches, NCP has incurred damages including:

(i)        Lost sales in the amount of at least $3 million;

     (ii)     Warehousing costs in the amount of at least $75,000.00 (which continue to accrue);

     (iii)     Additional expenses for expedited shipping of at least $600,000.00;

     (iv)     Payment of royalty and licensing fees in the amount of at least $280,000.00;

     (v)     Payment of commissions and other salaries of at least $50,000.00.

259.     In addition, as a result of Plaintiff/Counterclaim Defendant's actions and conduct, NCP has suffered damage to its reputation in an amount to be determined at trial.

## THIRD COUNTERCLAIM

## (Breach of Implied Warranty of Merchantability, N.Y.U.C.C. § 2-314(1))

260.     Defendants repeat and reallege each and every response contained above as if fully set forth herein.

261.     Plaintiff/Counterclaim Defendant has breached the implied warranty of merchantability under N.Y.U.C.C. § 2-314(1)).

262.     The Stacy Adams shirts were non-conforming and defective and were not reasonably fit for the purpose intended.

263.     Plaintiff/Counterclaim Defendant failed to deliver the Stacy Adams shirts in a condition consistent with industry standards.

264.     As a direct and proximate result of Plaintiff/Counterclaim Defendant's breaches, NCP has incurred damages including:

     (i)     Lost sales in the amount of at least $3 million;

     (ii)     Warehousing costs in the amount of at least $75,000.00(which continue to accrue);

    (iii)     Additional expenses for expedited shipping of at least $600,000.00;

    (iv)     Payment of royalty and licensing fees in the amount of at least $280,000.00;

    (v)     Payment of commissions and other salaries of at least $50,000.

265.     In addition, as a result of Plaintiff/Counterclaim Defendant's actions and conduct, NCP has suffered damage to its reputation in an amount to be determined at trial.

## FOURTH COUNTERCLAIM
### (Breach of Implied Warranty of Fitness for a Particular Purpose, N.Y.U.C.C. §2-315)

266.     Defendants repeat and reallege each and every response contained above as if fully set forth herein.

267.     Plaintiff/Counterclaim Defendant has breached the implied warranty of fitness for a particular purpose under N.Y.U.C.C. § 2-315.

268.     Plaintiff/Counterclaim Defendant had knowledge that NCP was relying on Plaintiff/Counterclaim Defendant's skill and judgment to manufacture Stacy Adams shirts pursuant to the specifications and samples agreed upon.

269.     Plaintiff/Counterclaim Defendant failed to manufacture and deliver goods which conformed to such specifications and samples.

270.     As a direct and proximate result of Plaintiff/Counterclaim Defendant's breaches, NCP has incurred damages including:

    (i)     Lost sales in the amount of at least $3 million;

    (ii)     Warehousing costs in the amount of at least $75,000.00 (which continue to accrue);

    (iii)     Additional expenses for expedited shipping of at least $600,000.00;

    (iv)    Payment of royalty and licensing fees in the amount of at least $280,000.00;

    (v)    Payment of commissions and other salaries of at least $50,000.00.

271.    In addition, as a result of Plaintiff/Counterclaim Defendant's actions and conduct, NCP has suffered damage to its reputation in an amount to be determined at trial.

## FIFTH COUNTERCLAIM

### (Breach of Express Warranty)

272.    Defendants repeat and reallege each and every response contained above as if fully set forth herein.

273.    Plaintiff/Counterclaim Defendant expressly warranted to NCP that the Stacy Adams shirts would conform to specifications and samples agreed upon.

274.    Plaintiff/Counterclaim Defendant failed to deliver goods which conformed to such specifications and samples.

275.    Plaintiff/Counterclaim Defendant has breached the express warranties given to NCP.

276.    As a direct and proximate result of Plaintiff/Counterclaim Defendant's actions and conduct, NCP has incurred damages including:

    (i)    Lost sales in the amount of at least $3 million;

    (ii)    Warehousing costs in the amount of at least $75,000.00(which continue to accrue);

    (iii)    Additional expenses for expedited shipping of at least $600,000.00;

    (iv)    Payment of royalty and licensing fees in the amount of at least $280,000.00;

(v)     Payment of commissions and other salaries of at least $50,000.00.

277.     In addition, as a result of Plaintiff/Counterclaim Defendant's actions and conduct, NCP has suffered damage to its reputation in an amount to be determined at trial.

## SIXTH COUNTERCLAIM

### (Fraud In The Inducement)

278.     Defendants repeat and reallege each and every response contained above as if fully set forth herein.

279.     Plaintiff/Counterclaim Defendant fraudulently induced NCP to order Stacy Adams shirts from Plaintiff/Counterclaim Defendant by materially misrepresenting to Defendants that Plaintiff/Counterclaim Defendant was capable of manufacturing and supplying such shirts pursuant to the specifications and samples agreed upon, in a timely manner.

280.     Plaintiff/Counterclaim Defendant concealed facts which would have allowed Defendant NCP to conclude that Plaintiff/Counterclaim Defendant was not capable of manufacturing and delivering conforming goods.

281.     Defendants reasonably relied upon the material misrepresentations.

282.     As a direct and proximate result of Plaintiff/Counterclaim Defendant's fraudulent misrepresentations and omissions, NCP has incurred damages including:

(i)     Lost sales in the amount of at least $3 million;

(ii)     Warehousing costs in the amount of at least $75,000.00 (which continue to accrue);

(iii)     Additional expenses for expedited shipping of at least $600,000.00;

(iv)     Payment of royalty and licensing fees in the amount of at least $280,000.00;

(v)      Payment of commissions and other salaries of at least $50,000.00.

283.      In addition, as a result of Plaintiff/Counterclaim Defendant's actions and conduct, NCP has suffered damage to its reputation in an amount to be determined at trial.

## SEVENTH COUNTERCLAIM

### (Breach of Joint Venture/Contract and Accounting)

284.    Defendants repeat and reallege each and every response contained above as if fully set forth herein.

285.    Pursuant to the Joint Venture Contract, Mr. Paglia invested a total of five-hundred and sixty-five thousand dollars ($565,000.00) in the Joint Venture and had a 75.7% stake in the Joint Venture Company.

286.    Mr. Paglia was to receive net rental income from the buildings purchased as part of the Joint Venture Company.

287.    Upon information and belief, the buildings owned by the Joint Venture Company generated rental income and have been sold.

288.    Plaintiff/Counterclaim Defendant has failed to provide any accounting or funds to Mr. Paglia.

289.    Accordingly, Mr. Paglia demands a full and complete accounting of all assets, profits and income from the Joint Venture Company and a judgment directing the turnover of 75.7% of all proceeds and assets of the Joint Venture Company.

**WHEREFORE**, Counterclaim Plaintiffs NCP and Thomas Paglia demand judgment dismissing each and every cause of action in the Complaint as well as judgment on the Counterclaims as follows:

(i)        On the First through Sixth Counterclaims, judgment in an amount to be determined at trial, plus interest, fees, costs and expenses but not less than $4,005,000.00;

(ii)       On the Seventh Counterclaim, a full and complete accounting of the assets, income, expenses and  profits of the Joint Venture Company and a turnover of 75.7% of all net assets and income;

(iii)      And such other and further relief as the Court deems just and proper.

Dated:  White Plains, New York
        April 23, 2015

                                           /s/ Jay Teitelbaum
                                         TEITELBAUM & BASKIN, LLC

                                         *Attorneys for NCP Direct Sourcing, Inc. and Thomas Paglia*
                                         Jay Teitelbaum, Esq.
                                         1 Barker Avenue
                                         White Plains, New York 10601
                                         (914) 437-7670
                                         jteitelbaum@tblawllp.com