USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 1 7 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hangzhou Kailai Neckwear Apparel Co. Ltd.,

Plaintiff,

–v–

NCP Direct Sourcing, Inc., et al.,

Defendants.

15-cv-1441 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Hangzhou Kailai Neckwear Apparel Co. ("Kailai") brings this suit for breach of contract and related causes of action against two corporate entities, each named NCP Direct Sourcing, Inc., and one individual, Thomas Paglia (collectively, "Defendants"). Before the Court is Kailai's motion to amend the complaint to add a claim for piercing the corporate veil against Gaeann Riccio, who Kailai alleges is Paglia's wife and the 100% shareholder of one of the NCP corporate entities. For the reasons that follow, Kailai's motion is DENIED.

## I. BACKGROUND[1]

Kailai is a Chinese corporation that manufactures and exports clothes and fashion accessories. Dkt. No. 48, Ex. 2 ("Am. Compl.") ¶¶ 5, 13. Since 2000, Kailai has done business with Paglia—originally through a company called Tojon Fabrics, Inc., which was later dissolved, and then through NCP Direct Sourcing, Inc. Am. Compl. ¶¶ 16-18. Kailai alleges though that there are two NCP entities—the first, "NCP-NY," is a New York corporation with its principal place of business in New York, and the second, "NCP-NJ," is a New Jersey corporation with its

[1] For the purposes of this motion, the Court accepts as true the factual allegations contained in Kailai's proposed amended complaint. *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006).

principal place of business in New Jersey. *Id.* ¶¶ 6-7. Kailai claims that the two entities are really one enterprise, overseen by Paglia and Riccio, operating as NCP Direct Sourcing, Inc. ("NCP"). *Id.* ¶ 8.

Paglia began doing business through NCP-NY in 2004, but he formed NCP-NJ in 2013 and started shifting NCP's operations to New Jersey then. *Id.* ¶¶ 18, 20. Kailai claims that, between December 2012 and November 2013, NCP placed about 96 orders for various garments and accessories from Kailai, and that these orders remain unpaid. *Id.* ¶ 22. The total value of these goods is allegedly $3,249,142.57. *Id.* ¶ 28. Kailai also claims that NCP owes $87,149.54 for previously shipped goods, bringing its total arrears to $3,336,292.11. *Id.* ¶¶ 36, 39. Throughout the period when NCP accrued this debt, Kailai alleges that Paglia induced it to continue to accept orders from NCP based on the reasonable belief that NCP's profits would increase and that Kailai would eventually be compensated. *Id.* ¶ 72. Kailai claims that NCP intentionally and falsely represented that its future earnings would be used to pay down its account receivable with Kailai, when in reality NCP was contacting other suppliers in China in the hopes of abandoning its debt to Kailai. *Id.* ¶¶ 73-75.

In its original complaint, Kailai set forth a series of allegations regarding Paglia's purported control over NCP, claiming that the entity was his alter ego. Compl. ¶¶ 82-89, Dkt. No. 1. Accordingly, it sought to pierce the corporate veil against Paglia. *Id.* ¶¶ 124-141. In its proposed amended complaint, Kailai seeks to add Riccio to the veil-piercing count, and it has added Riccio's name to many of the allegations that originally concerned only Paglia. *See* Am. Compl. ¶¶ 125-142.

Kailai filed its motion to amend on December 22, 2015. Dkt. No. 47. Shortly thereafter, this Court granted the request of prior counsel for Defendants to withdraw and stayed the case. Dkt. No. 53. After new counsel appeared on Defendants' behalf, the Court extended the briefing schedule for the motion to amend. Dkt. No. 58. Defendants filed their opposition to the motion to amend on March 21, 2016, Dkt. No. 59, and Kailai filed a reply on April 1, 2016, Dkt. No. 64. Along with its reply, Kailai filed a declaration from Hannah Faddis and appended to that

declaration a copy of NCP-NJ's 2013 tax returns. Dkt. No. 63 ("Faddis Decl.") & Ex. 1. The purpose of attaching the returns was to demonstrate that "Defendant Gaeann Riccio is [the] 100% shareholder" of NCP-NJ. Faddis Decl. ¶ 11. In light of the inclusion of the tax returns, which had not previously been filed, the Court granted Defendants' request to file a surreply. Dkt. No. 67. Defendants filed their surreply on April 21, 2016. Dkt No. 68.[2]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that courts freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Where, as here, the proposed amendment would add an additional party, "the motion is technically governed by Rule 21, which provides that 'the court may at any time, on just terms, add or drop a party,' rather than Rule 15(a)." *Id.* (quoting Fed. R. Civ. P. 21). But "the same standard of liberality applies under either Rule." *FTD Corp. v. Banker's Trust Co.*, 954 F. Supp. 106, 109 (S.D.N.Y. 1997) (internal quotation marks and citation omitted).

Despite the Federal Rules' liberal standard for adding parties or claims, a court "may deny leave [to amend] if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party or (4) would be futile." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96-97 (S.D.N.Y. 2010) (internal quotation marks, citation, and alterations omitted). A proposed amendment is futile if the amended pleading could not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). As such, the amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

[2] Kailai subsequently requested permission to respond to the surreply. Dkt. No. 69. There was not, however, any new information in Defendants' surreply that warranted such a response. In any event, the request is moot in light of the Court's resolution of the motion to amend.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Although "the standard for futility has been formulated based on a motion to dismiss, where the motion to amend is made after discovery, courts have looked to the record in assessing whether the proposed amendment is futile." *Felmine v. City of New York*, No. 09-CV-3768 (CBA), 2011 WL 4543268, at *25 n.8 (E.D.N.Y. Sept. 29, 2011).

To the extent the amended complaint includes allegations of fraud, those allegations must meet the heightened pleading standards of Rule 9(b). Under Rule 9(b), a plaintiff must state "with particularity the circumstances [that] constitute[e] fraud." Fed. R. Civ. P. 9(b). In particular, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted); *see generally* 5A Charles Alan Wright et al., *Federal Practice & Procedure* § 1298 (3d ed. 2004 & Supp. 2016). Although the Rule provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

## III. DISCUSSION

Defendants' principal argument against permitting Kailai to amend its complaint is that the amendment would be futile because Kailai has failed to adequately allege that Riccio should be liable for NCP's debts under a veil-piercing theory. To pierce the corporate veil under New York law,[3] a plaintiff must show that "1) the owner exercised complete domination over the

[3] Although Kailai seeks to add Riccio to Count Six of the complaint, which purports to be for piercing the corporate veil, the Court notes that "an attempt of a third party to pierce the corporate veil does not constitute a

corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (internal quotation marks and citation omitted). For the reasons explained below, the Court holds that even if Kailai has sufficiently alleged that Riccio exercised complete domination over NCP, Kailai has failed to adequately allege that Riccio used that control to commit a fraud or wrong against it.

With respect to the first prong of the veil-piercing inquiry, courts consider a number of factors in assessing whether a corporation has been completely dominated, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997).

As Defendants point out, many of the allegations in Kailai's amended complaint that speak to Riccio's alleged domination of NCP are conclusory. *See, e.g.*, Am. Compl. ¶ 139 ("Defendants Paglia and Riccio conducted the business of NCP in disregard of its corporate formalities in a manner that suited Defendants Paglia and Riccio's own personal convenience."). But other allegations do address the factors outlined above. For instance, Kailai alleges several specific ways in which NCP disregarded corporate formalities (factor 1). NCP allegedly "failed to keep adequate records" of its corporate affairs and finances, did not issue share certificates to its sole shareholders (Paglia and Riccio), failed to obtain capital contributions from Paglia and Riccio for their shares, and distributed money to Paglia and Riccio before ensuring NCP could meet its financial obligations. *Id.* ¶ 137. Additionally, Kailai expressly alleges that NCP was

---

cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993); *see also PK Rest., LLC v. Lifshutz*, 138 A.D.3d 434, 436 (N.Y. App. Div. 1st Dept 2016) ("[P]iercing the corporate veil is not a cause of action independent of a cause of action against the corporation."). This authority does not alter the Court's decision here, however, as the futility of adding Riccio to the complaint does not turn on whether veil piercing is pleaded as a separate cause of action.

undercapitalized from the time of its formation (factor 2). *Id.* ¶ 134. And Kailai claims that "Paglia and Riccio continually drained all income out of NCP in disregard of the corporate existence of NCP," *id.* ¶ 135, which suggests an intermingling of personal and corporate funds (factor 3), a lack of discretion exercised by NCP (factor 6), a failure to deal at arm's length (factor 7), and a further disregard of corporate formalities. Finally, the allegation that Riccio "is the sole shareholder of NCP-NY, and an officer, director, and fulltime employee of NCP," *id.* ¶ 10, further suggests that Riccio exercised complete domination over NCP.[4]

Assuming these allegations satisfy the first prong of the veil-piercing inquiry, Kailai has nonetheless failed to plausibly allege that Riccio's "domination [of NCP] was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consultant*, 268 F.3d at 63 (internal quotation marks and citation omitted); *see also EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) ("To avoid dismissal, a party seeking application of the [veil-piercing] doctrine must come forward with factual allegations as to *both* elements of the veil-piercing claim." (emphasis added)). To pierce the corporate veil against Riccio, Kailai "must establish that [Riccio], through [her] domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [Kailai] such that a court in equity will intervene." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1161 (N.Y. 1993).

As an initial matter, although "veil-piercing claims are generally subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a)," such claims are subject to "the heightened pleading standard of Rule 9(b)" when they are "based on allegations of fraud." *EED Holdings*,

---

[4] As Defendants note in their surreply, there is confusion in Kailai's filings over whether Riccio was the 100% shareholder of NCP-NJ or NCP-NY. *Compare* Faddis Decl. ¶ 10, Dkt. No. 63 (claiming that a previous declaration had "stated that the tax returns obtained from the Defendants during the course of discovery indicated that proposed additional Defendant Gaeann Riccio is the 100% shareholder of NCP-**NJ**), *with* Dkt. No. 48 ¶ 19 ("Ms. Riccio is the 100% shareholder of NCP-**NY** and devoted 100% of her time in 2014 to that company."). The tax returns submitted along with the second Faddis Declaration suggest that Riccio is the 100% shareholder of NCP-NJ. Faddis Decl., Ex. 1 at 1, Dkt. No. 63-1 (listing Secaucus, New Jersey, as the location for NCP Direct Sourcing, Inc.). But the Court need not decide whether this apparent inconsistency is material, given the Court's decision to deny the motion to amend on other grounds.

228 F.R.D. at 512 (internal quotation marks and citation omitted). Here, Kailai characterizes its allegations as involving "fraudulent inducement" and apparently concedes that "the Rule 9(b) standard" applies in assessing its veil-piercing claim against Riccio. Reply Br. 8. But Kailai fails to allege, with the specificity required by Rule 9(b), that Riccio used whatever authority she had over NCP to defraud Kailai. To the extent the allegations in the amended complaint address any individual's alleged attempts to control NCP for fraudulent purposes, the allegations relate only to Paglia, not Riccio. *See, e.g.*, Am. Compl. ¶ 72 ("Kailai was induced by Mr. Paglia's representations to accept further orders throughout 2013"); *id.* ¶ 131 ("Defendant Paglia has represented to Plaintiff that its failure to pay is due to over-extended accounts receivable for its own customers."). There are no allegations that Riccio made fraudulent statements, *see Lerner*, 459 F.3d at 290, or otherwise attempted to mislead or defraud Kailai. Instead, the allegations about Riccio address only her control over NCP; they do not speak to how she used that control with respect to Kailai. The closest Kailai comes to this latter kind of allegation is its claim that "NCP, Paglia, and Riccio knew that NCP did not have the resources to fully perform under the contracts [with Kailai] when they were entered into." Am. Compl. ¶ 132. But even this allegation falls short of permitting the Court to plausibly infer that Riccio used *her* purported control over NCP to commit a fraud or wrong against Kailai. Amending the complaint to permit piercing the corporate veil against Riccio would therefore be futile.

Moreover, the Court would reach the same result even if the more relaxed pleading standard of Rule 8 applies. Kailai notes in its reply brief that "a plaintiff 'is not required to plead or prove actual fraud in order to pierce the corporate defendant's corporate veil, only that the individual defendant's control of the corporate defendant was used to perpetrate a wrongful or unjust act toward plaintiff.'" Reply Br. 8 (quoting *Ridge Clearing & Outsourcing Sols., Inc. v. Khashoggi*, No. 07-CV-6611 (RJH), 2011 WL 3586455, at *10 (S.D.N.Y. Aug. 12, 2011), *aff'd sub nom. Broadridge Sec. Processing Sols., LLC v. Khashoggi*, 507 F. App'x 57 (2d Cir. 2013)). But Kailai never identifies a non-fraudulent wrongful act perpetrated by Riccio through her control of NCP. Kailai therefore has failed to "plead[] factual content that allows the court to

draw the reasonable inference that [Riccio] is liable" under a veil-piercing theory. *Iqbal*, 556 U.S. at 678.

## IV. CONCLUSION

For the foregoing reasons, Kailai's motion to amend is DENIED. This resolves Docket Nos. 47 and 69.

A case management conference is hereby scheduled for September 16, 2016, at 2:15 p.m.

SO ORDERED.

Dated: August 17, 2016
New York, New York

ALISON J. NATHAN
United States District Judge